Good morning, Your Honors. Please, the Court. David Richardson of Winston & Strawn on behalf of Appellant Condor Systems, Inc. I would like to reserve five minutes for my report. Sure. I would like to begin this morning. Mr. Richardson, before you get to the things you want to discuss, would you tell me what the status of this case is in the Bankruptcy Court? Yes, Your Honor. The case is still open. Anything been done since the order that's before us? Related to these parties? Yes. As you may have seen from the request for judicial notice filed by the appellees, there was two complaints filed. No hearings, though? There was a motion to dismiss. Pardon me? There was a motion to dismiss filed by Mr. Taft. There was a hearing, and that was denied. Everything has been stayed ever since. So it's still open in the Bankruptcy Court? It's still open. Okay. I would like to begin by talking about jurisdictional issues, in particular, why we believe this Court should hear this appeal, even though the BAP remanded for factual findings. And we believe there are three distinct tests that compel the acceptance of jurisdiction. The traditional test, under the standards identified in Stanley v. Crossland, the more recent and more liberal tests that have been established in cases such as Oshlin, which is attached to Appellee's Brief, and thirdly, the collateral order doctrine. With respect to the traditional tests, the first two factors are the need to avoid piecemeal litigation and judicial efficiency, and we think the same issues deal with both of those factors. Without direction from this Court on how to apply Section 502b7, the Bankruptcy Court will not know how to proceed on remand. The Condor opinion, the BAP's Condor opinion, is laud the case in this matter before the Bankruptcy Court and provides a very clear statement of the law, which is that the 502b7 cap is calculated without regard to severance payments pre- or post-petition, including those that come from letters of credit. Does the Bankruptcy Court have to apply that? Is the law the case? As I understand it, being the BAP's opinion in this ruling and on remand, it would be law of the case. So how is it piecemeal? Well, the difficulty is that the ---- How is it piecemeal? Yes. You're saying that the Bankruptcy Court has no guidance on it. Oh, well, the reason ---- They have guidance from the Bankruptcy Appellate Panel. The reason it has no guidance is within months of issuing that opinion, the BAP was already backtracking from it. In the Mayan Network's opinion, it clarified what it meant in the Condor opinion, saying that, well, in Condor it was an unsecured letter of credit and that's what we meant, because here the real focus, it was what is the impact on assets of the estate. But the Condor opinion says secured or unsecured, you don't apply those payments to the letters of credit. But that is the law of the case as far as the Bankruptcy Court here. Yet the same members of ---- two of the same members of that panel have said in another case what they meant was. And what was the name of that case? That's Inri Mayan Networks, which is 306-BR-295. I'm not sure I'm following what the significance of this is. If they've distinguished it, they've distinguished it. And they've explained why Condor was properly decided and why Mayan is different. Well, my expectation is that if we go back on remand, we'll have two sides, one side arguing that the Condor opinion is law of the case and it's decided that these letter of credit payments cannot be applied to the cap, and we'll have another side saying, but it's noted a factual error. It thought the letter of credit here was unsecured. But, in fact, it's secured. But even if you're right about how that's going to play out, then it can come back to us after the whole thing is, you know, fully developed in the Bankruptcy Court. Yes. But in terms of avoiding piecemeal litigation and judicial efficiency, I think we have an opportunity now to state what the law clearly is and provide the Bankruptcy Court guidance on remand. Well, because there are pending matters before the Court, it's going to possibly come back to this Court anyway, isn't it? Well, at the moment, those are state until the Court receives direction on this appeal. But, I mean, in answer to Judge Allec's question, however this is decided, it's not going to be over in Bankruptcy Court. That issue, no. But it may not be able to get it. It's going to wind its way back somewhere or another. On the other issues, it could come back here. Isn't that true? That issue could. There are other issues that can't. And it could come back years from now. But if we get to the other issues, I think they work together to explain why it would not be in the interest of all parties to have that issue go back yet again to the Bankruptcy Court. The third factor is the systemic interest in preserving the Bankruptcy Court's role as fact finder. And while the BAP listed a series of facts that it believes need to be determined on remand, every single one of those facts was before the Court and was determined at the original trial. But did the Bankruptcy Court have an evidence you're hearing? It did, Your Honor. It asked no party had a witness to put forward. We had documents only, declarations. And the parties with the burden of proof, Mr. Taft and Mr. Young, are the parties who appealed to the BAP saying that the Bankruptcy Court didn't do their job. But, in fact, they didn't present evidence that they were happy with. The BAP says we need to go back to look at what their total State law damages were. And it talks about their total salaries and whatnot. But when Mr. Taft and Mr. Young amended their proofs of claim, that determined their total State law damages. A proof of claim in bankruptcy is the universe of your damages. And Mr. Taft said his were zero, and Mr. Young said his were $76,973. We didn't dispute those figures. Instead, we argued that they were not allowable as a matter of law. We presented arguments as to why Mr. Young's medical claims were part of his termination damages and should be disallowed. And we presented arguments about why his claim for insurance payments. And the Bankruptcy Court agreed with you on the question of law? The Bankruptcy Court sustained our objection. On the question of law? Yes. Okay. The BAP said that the Bankruptcy Court was wrong and that there are factual issues that must be worked out. Right. And every one of these factual issues that I'm going through was there. For example, total State law damages was in their proofs of claim. That's the fact. It wasn't disputed. The BAP says we need to determine whether Mr. Young's consulting agreement was part of his termination damages or was separate. But the only damage element under Mr. Young's consulting agreement was for 10 years of future medical benefits. What finding was made by the Bankruptcy Court on that fact? His own evidence. Mr. Young's declaration was that his evidence was that the benefits were still being provided. We argued that there was a reason of law to disallow that. But if it's contingent, there is no breach, then it has to be disallowed as a contingent claim. The Bankruptcy Court sustained the objection. And on the ---- So there was no finding of fact. The Bankruptcy Court did not issue detailed findings of fact. It sustained the objection. But all of these facts were before the Court in the record. The BAP says that we need to go back and deal with the one-year compensation. But again, Mr. Taft and Mr. Young had the burden of proof. And they didn't come forward with those numbers in their original brief, so the BAP asked for supplemental briefing. And Mr. Taft and Mr. Young said they would come back with evidence. Instead, they came back with the argument that it was moot and they didn't put numbers forward. We put numbers in our brief and the BAP sustained the objection. Yet they've appealed to the BAP saying that the Bankruptcy Court didn't do its job. Instead, it's Mr. Young and Mr. Taft who didn't do their job. They didn't satisfy the burden of proof, despite two chances to do so before the Bankruptcy Court. The fourth factor is whether delaying review would cause either party irreparable harm. The Condor Estates are liquidating estates. This is the last major piece of litigation. If we have to go back and start over, relitigate facts, give them a third chance to satisfy their burden, and start over when this is really a simple issue of law, it will irreparably prejudice the Condor Estate. But you say if you have to go back, you are there in the Bankruptcy Court. Oh, yes. But because we believe that those factual issues raised by the BAP do not need to be determined yet again. They were determined properly in the first case. What we have now is a simple issue of law. And if this Court upholds how the Bankruptcy Court applied 502b-7, we're done with that issue. If we have to go back and apply it again with a new interpretation, the one, either the one from the BAP opinion or the one from the BAP's Mayan opinion, we'll be starting over. Under the more liberal test that was explained in Reulsion, the two factors are whether the central issue raised on appeal is legal in nature and its resolution could either dispose of the case or proceedings and obviate the need for fact-finding or would materially aid the Bankruptcy Court in reaching its disposition on remand. For the reasons I've been going into, we believe that both of these factors compel a hearing of this case. The issue here is purely legal, interpretation of 502b-7. All of the factual issues identified by the BAP have been dealt with. And hearing this issue purely on a legal matter obviates the need to go back and follow the BAP's order to once again inquire into all of these issues. Also, resolution of this appeal would not just aid the Bankruptcy Court. It's necessary to help the Bankruptcy Court determine which version of the BAP's ruling on 502b-7 it should be following. On the merits, the BAP says that this letter of credit is not like a security deposit because the security deposit is an asset of the estate, I guess. The letter of credit is a third-party obligation. What's the answer to that? Well, the BAP, again, takes two positions on that. In Condor, it tells us that we look at the name of the document and what the party has intended it to be. Security deposit, it says, is a very unique creation. Other letters of credit are simply third-party obligations, treated like guarantees in bankruptcy. But by the time it got around to the Mayan Networks case, it said it's a different procedure that applies. You don't look at what it's called. You look at what is its effect on property of the estate. And that's why in Mayan Networks the Court is saying, well, we actually meant it's when it's secured that you apply the payments to the cap, because it's when it's secured, those payments are working their way around and coming right out of estate property. It put the right standard into the Mayan case. It decided Condor based on the wrong standard. Do we know whether this letter of credit was secured or not? Yes, Your Honor. In our reply brief, we go through a series of citations that were in the record before the bankruptcy court explaining how the bankruptcy court was aware that this letter of credit was secured. We actually have in our we also cite to our brief before the BAP where we indicated that it's a secured obligation. And the BAP's opinion says a couple times in there that the obligation is the same, secured or unsecured. It's in Mayan that they come up with the distinction, I think, to explain away what they meant in Condor. But the reality is that courts across the country recognize that it's the impact on estate property that matters. If Mr. Young's employment agreement said that his damages would be paid in an escrow account, and Mr. Taft said it would be either an escrow account or a letter of credit, if they'd been paid out of an escrow account, we wouldn't be here. It would have been so obvious that they were getting property of the estate directly from the estate. The only question is, does setting it up as a letter of credit mean that they can get that estate property out the back door and avoid the implications of the bankruptcy code? If the letter of credit is secured, then what happens? Then the bank comes back with a claim against the debtor. But that — Just against the security? Against the security, and then to the extent the security wouldn't provide it, they would have an unsecured claim for any remainder. At least that is how I understand the law. This leads me to my third reason why I think this Court should accept jurisdiction, and that is the collateral order doctrine. The BAP has come up with a new definition stating that a bank's independent contractual reimbursement right is actually just a secondary obligation of a co-obligor, and it can be subordinated — it can be subrogated and disallowed in bankruptcy in the same manner that the claimants' claim for termination damages can be. In the Condor opinion on pages 16 and 17, the Court talks about how the 1995 amendments to Article V of the UCC, in its words, obliterated the primary obligation of the letter of credit issuer and treated them now only as a co-obligor in bankruptcy. If the bank is fully secured, can they go against the collateral immediately without being subordinated to anybody? That is my understanding. But in the Mayan Network's opinion and in the Condor opinion, the BAP says otherwise. On page 310 of the Mayan opinion, the BAP went on — the same author of the Condor opinion went on on this point again, explaining that now the security comes back into the estate to the extent that it would exceed the 502b7 cap. I think it's going to be a big surprise to banks that issue letters of credit if they find that their contractual reimbursement rights against security are going to be subject to the 502b7 section that applies to a claim. It doesn't apply to a bank. It applies to the claim of the claimant. And Mayan Networks was a security deposit case, though, right? It was. It was a letter of credit case that the court noted that it didn't matter whether it was called a security deposit, which it wasn't, or whether it has the functional equivalent of a security deposit. And that was the argument where the court went into note, though what really matters is how does it affect property of the estate, not what do we call it. You've argued the collateral order doctrine. Did you argue that in your brief? I don't have that in my brief, Your Honor. I don't see any citation to the relevant cases or any discussion of it. Yes, I realize that that was not something that I had thought about at the time. Can you do that now? If the court feels it's improper that I go into that now, I won't continue. But the Mayan Networks case. Is that fair to the other side? Well, we're all aware that Mayan Networks case existed before the briefing was closed in this case. No, I'm talking about your reliance on the collateral order doctrine. I understand, Your Honor. I haven't called it the collateral order doctrine in my briefs, but I have pointed out that the BAP was wrong in both cases when it came down with this Article V argument. And that is briefed in our brief. Whether it was right or wrong has nothing to do with whether we have jurisdiction. I understand. You said you wanted to reserve some time. Did you want to do that? Yes, Your Honor. You don't have to. If you don't want to, you can use it all up now if you prefer. I would like to reserve some time. Thank you. Good morning. Good morning. May it please the Court, I am Patrick Costello. I represent Robert E. Young and John Taft, the appellees whom I'll refer to as the officers. Before I go into my argument, I'd like to briefly address some of the issues Your Honor has asked concerning the status of the proceeding in the bankruptcy court. In addition to the actions that counsel has referred to in the bankruptcy court, there was also a hearing in the adversary proceedings, which are seeking to recover the proceeds of the letter of credit from the officers. There was a motion for an injunction to enjoin Mr. Taft from drawing on his letter of credit. Mr. Taft raised all the arguments why that was inappropriate, improper, that there were statutory provisions that said you don't enjoin the draw on a letter of credit, in addition to other arguments about res judicata, et cetera, et cetera. The bankruptcy court did grant that injunction and gave an alternative and said to Mr. Taft you either are prohibited from drawing on that letter of credit or you can draw on the letter of credit as long as you don't get control of the funds, that the funds go immediately into an escrow account with your counsel. And it's the latter that, in fact, has been done. You know, Mr. Kressel, I'm no expert on this, to put it mildly. But if I understand how this would work, if you're right, then Young gets his golden parachute of a million dollars plus. And in addition to that, he and the janitor and the cleaning person and the parking lot attendant and the cook, whoever else, will compete over whatever crumbs are left in addition to the million dollars he's already gotten. Is that the way this would work? The way it – well, the answer to that is as it stands now, the debtor could attempt to try and claw back the payment on the theories that the bankruptcy court usually gives. But you would resist, I presume, hammer and tongs. I certainly would resist. So if it works out the way you want it to work out, this guy gets his golden parachute of a million dollars and whatever and then still gets to file his claim along with all the other underlings in the company. The claim for the amounts due him other than his severance. That's correct. He would get to keep the letter of credit proceeds. Which you might collect a very good result. Well, I think that – You're conceding, of course, that the debtor could sue Mr. Young on the grounds that the payment through the letter of credit was a preference or was a fraudulent transaction of some sort. Well, they could certainly try, but they haven't done that. They've limited themselves to seeking out an unjust enrichment theory. At this point in time, they've waited too long to attempt to sue him on those preference theories. I believe the statute of limitations has already run to bring it for the debtor in possession or the trustee or the estate's representative to bring such cause of action. The court asked whether there was an evidentiary hearing held. The answer to that is no. There was no evidentiary hearing held. There was no evidence admitted. The local bankruptcy rules provide that if there is a dispute, if there is a factual dispute raised by the objection or the response, the first initial hearing is a non-evidentiary hearing that's intended to schedule how an evidentiary matter is to go forward. That first non-evidentiary hearing was continued to the second hearing, which, again, it was a continuation of a non-evidentiary hearing. The appellant in its briefs acknowledges that each of those hearings was non-evidentiary. Do you quarrel with Mr. Richardson that the record shows that the letter of credit was fully secured? There is no dispute that the letter of credit is secured. What is the significance of that? I would say that there is no significance to that, Your Honor. There is no significance. We have to really address the Mayan decision and why the Mayan decision really does not impact this decision at all. And the first reason is that the Mayan decision is following a line of decisions that says, if you have a security deposit that exists as of the commencement of the case, it has to be applied to the allowed claim. And when I say allowed claim, I mean the claim after it is capped by 502b6. And the reason for that rule is that security deposit is property of the estate. It may be in the possession of the landlord, but it is not the landlord's property until there is an effect of foreclosure when the security deposit is applied and becomes the landlord's property. Now, what Mayan did was it extended that doctrine in a somewhat controversial manner. One or two courts have done it as well, and they have said where a letter of credit is provided to the landlord as security, we will treat it. If it is given as security, we will treat it just as a security deposit. The Mayan court is saying the olden rationale, which is the Second Circuit case which developed that doctrine, should apply to any equivalent to a security deposit. The difference between Mayan and Condor is that the letter of credits were not given as a security deposit. They were given as the discharge of the performance of the obligation to pay the severance. There was no remaining obligation after Condor caused the letter of credits to be issued. It was the payment itself. It was not security or collateral for the payment. That is the fundamental difference between Condor and Mayan, and that is why in Condor the bankruptcy appellate panel said the security deposit doctrine doesn't even apply because we don't have anything in front of us that functions like a security or a security deposit. How would this work? If the bank can go against its security, are they subordinated to anybody, or can they just go ahead and look to their collateral? Well, that is a question. If the Mayan rule of law is to be adopted for letter of credits that are issued as security for performance of a lease or an employment contract, you have to go to the next step, which was not before the BAP in Mayan, is not before the Court now, is what is the consequence on the issuer? Is the issuer subject to the same caps and restrictions on allowance as the landlord would be? Because in Mayan they've effectively collapsed. What you've done is the Mayan court, and what is truly controversial about the decision, it has collapsed the entire letter of credit. It has collapsed the independence principle, and it has said we will treat the issuer's reimbursement, draw against its collateral, and reimbursement of its claim as if it is a payment from the debtor to the landlord itself. Now, that is controversial. There are one or two courts that have done it, but certainly this circuit has not decided that issue. But if that rationale is in fact accepted, the next question has to be, well, what is the consequence for the issuer? Let me just wrap up on Mayan networks for a second. That was decided about a year ago. Do you know, is that a dead letter now, or has that been appealed to us? My understanding is that is under appeal. It is under appeal? That's correct. It would not be inconceivable that BAP got Condor right and got Mayan wrong. Well, in fact, you can have both of them right. You can have the decision be right in Mayan, but the reasoning, a portion of the reasoning, be wrong. And the reason, and what the appellant, what the appellant has picked up on is one, is Mayan's interpretation of one aspect of Condor and has said that, well, in Condor the reimbursement obligation wasn't security. And presumably if it had been, Condor would have come to a different result. Well, in fact, the Condor panel would not have come to a different result, because it wasn't dealing with the letter of credit as to security. There was no reason to treat the reimbursement obligation as if it were a payment to Mr. Young or to Mr. Taft. And, in fact, the Condor panel opinion says that we, this very issue was presented to the panel in the course of argument. And the panel responded and said, we don't think the rights of the issuer should determine whether Mr. Taft's and Mr. Young's claims should be rejected or not. And so there the panel said that the rights of the issuer are for another day in another case. We're going to determine this case based on what the rights of Mr. Taft and Mr. Young should be. And that's what it did. So the ultimate result in Mayan can be correct, because appellant is incorrect in saying that Mayan never mentioned security. In fact, the Mayan decision was quite clear, and the documentation was quite clear that the letter of credit was being given as security. In fact, if you read the concurring opinion, it is the letter of credit, the certificate that the landlord had to give with the letter of credit, stated that the landlord was certifying that the draw on the letter of credit, it would take and hold as a security deposit. So really, in one sense, Mayan did not have to go through the whole collapsing of the independence principle and say we are going to treat the issuer's reimbursement as if it were a payment directly to the landlord, which it did in its reasoning. It could have just said the landlord contractually agreed that the draw on the letter of credit was going to be treated as a security deposit. So we're right back where we are as if it were just any old regular security deposit, and we'll treat it as such and we'll apply it as such. So you can end up with the same, each of them being the right result, with only a portion of the rationale having to be rejected or corrected. And I would say that the fact that Mayan misinterpreted Condor is a reason that the Mayan decision may be corrected, but it's certainly not a reason why there should be appellate jurisdiction for the Condor decision. Appellant counsel has one of its arguments is that for taking jurisdiction in this case, is that it should be done to avoid relitigation. Well, the Court is correct. There's going to be litigation irrespective of whether it takes appellate jurisdiction or not. We have, we currently have two adversary proceedings that are based on the very same facts and circumstances and are seeking affirmative relief against Mr. Young and Mr. Taft, and they're based on an unjust enrichment theory. In order to prove out that unjust enrichment theory, the plaintiff is going to have to prove all the same facts that it is saying we don't have to be concerned with and you don't have to go back and find facts with in this proceeding. In order to prove up the unjust enrichment theory, they're going to have to be able to say what was the amount of each officer's claim. They're going to have to say how much did each of them receive and how much was each of them entitled to receive, and then the argument is they were unjustly enriched to the extent that they received more than their cap's claim. So you're going to have to go through the whole analysis that the BAP has said the Bankruptcy Court has to go back and do with respect to the allowance of the claims. You have to determine what the amount of the claim was at the time of the filing of the petition. You have to determine what portion of that claim is in fact damages for termination of the employment agreement, and there is a big issue with respect to that, particularly with respect to Mr. Young. You can only cap that portion of the claim that is for damages for termination of an employment contract. You can't cap the other part. So before you get to the issue of applying the cap and saying what the cap is, you have to determine what portion of the claim is subject to the cap and is not subject to the cap. Then you have to go and determine what the cap amount is, and so that's the one year's compensation from the time of termination. And certainly that is a fact that was never found by the trial, by the Bankruptcy Court. And in fact, when you talk about what facts were found by the Bankruptcy Court, well, there are really none of them that I can identify. I know that the officers lost and their claims were disallowed, but the court never found what the amount of the claim was as of the commencement of the case. The court never found what the amount of one year's compensation was. The court never found what portion of the claim might be subject to the cap and might not be subject to the cap. It made none of those findings. And so I think what I'd like to address is some of the substance of the appeal. And really I think there is only one substantive issue on appeal here, and that is how the proceeds of the letter of credits that were received by the officers in satisfaction of the debtor's severance obligation are to be accounted for in determining their claims. And really specifically, it's whether those proceeds are to be accounted for in determining the claim as of the commencement of the case, or are they to be accounted for and credited against the capped amount after we go through the whole calculation. Now, I don't think there's any dispute that the ordinary rule is that consideration received by a creditor prior to the commencement of the case is accounted for in determining the creditor's claim as of the commencement of the case. Well, under the ordinary rule, the consideration received by each of the officers, their letter of credits, they were clearly received prior to the commencement of the case, ought to be accounted for in determining their claims as of the commencement of the case. Now, it may be true that there may be some theory on which the estate can claw back a portion of those proceeds on the traditional avoidance actions preference and fraudulent conveyance. But the calculation of their claim as an initial matter should take those proceeds, take that consideration into account. And that is what the officers did when they amended their claim. When Mr. Young reduced his claim to $76,000 and changed, and Mr. Taft reduced his claim to zero. Now, what the debtor is doing, the debtor is arguing that there should be the application of the special rule. And the special rule, Condor calls it the security deposit doctrine. And as I explained, when there is a security deposit existing as of the commencement of the case, you don't take it into account in calculating the claim as of the commencement of the case. You go through the calculation, you cap the claim, and then you apply it, you credit it towards the capped claim. And again, Mayan took that a step further and said that when we have a letter of credit that is offered as a security, we'll treat the letter of credit proceed in the same fashion. Well, the problem that in terms of trying to apply that rule to this case is that there is no security. There's no ‑‑ there's no ‑‑ there's no ‑‑ I mean, there's been no finding that those letter of credits operated as security. The issue was presented to the bankruptcy court, and the bankruptcy court response was, well, why does that even matter? In briefing it to the bankruptcy appellate panel, the bankruptcy appellate panel reviewed the entire record and said, we can't see anything that resembles security, why these should be treated as security. And so, therefore, we can't apply the security deposit doctrine. The debtor has not even ‑‑ has not even challenged that component, that portion of the bankruptcy appellate decision. So there really is no basis. The bankruptcy appellate panel is saying, if you want us to apply the security deposit doctrine, you have to give us some reason. You have to say that it's a security deposit, and you're not. Mr. Fellow, thank you very much. Thank you, Your Honor. I appreciate the argument. Mr. Richardson. Thank you, Your Honor. First, I would just like to correct one issue on the Mayan case. We were counsel to Mayan Networks, our firm, Winston & Strawn. That case is no longer on appeal. It is final order. Second, these letters of credit are security. Mr. Young's and Mr. Taft's original proofs of claim were secured proofs of claim that state on their face that they are secured by letters of credit. Even they recognized that these letters of credit operated as security. The letters of credit are standby letters of credit, stated on their face as standby letters of credit, subject to international rules, states at the bottom, subject to international rules on standby letters of credit. We've cited the Stonebridge case in our briefs, which talks about the difference between standby letters of credit and ordinary commercial letters of credit. Standby letters of credit operate more like a guarantee. In order to get payment, you have to make a request to the bank that acts as if it is a statement that the original payment was a default. Not that there has to be a default, but the request for payment is the effective statement of stating that there was a default. The purpose of a standby letter of credit is essentially to act as security. It's what they put on their proofs of claim. It's what we had in this case. There was a spirited debate at the second hearing between the Court and Mr. Costello on whether or not these were security, tab 9, starting at page 72. And the Court disagreed with Mr. Costello. It made a finding. The evidence was put in by one party or the other or both on what the total claim is and what the annual compensation is. Only one party put evidence before the Court. The other party chose not to dispute it. We chose not to dispute the amounts in their proof of claim, but only to argue on issues of law. They chose not to put in evidence on annual compensation, even though they had the burden of proof. The Bankruptcy Court was properly able to proceed to a ruling based upon undisputed facts in the record. The Mayan Networks case is not ---- Now police attempted to withdraw some of the claims, didn't they? Mr. Taft stated that he was trying to withdraw the claim. There was no motion seeking leave to withdraw the claim before the Court. It was simply a statement. And the Bankruptcy Court never ruled on that? It didn't have a motion before it. So that's an issue that's still open. I suppose if it's not too late after an order disallowing the claim to withdraw, it could be filed. He could still do that. But my expectation is that an order disallowing a claim would be considered final, and at that point it would be too late to move for leave to withdraw the claim. But there was no order rejecting the motion. There was no motion. There was no motion. So there's no ruling on that issue. Except that I believe the order allowing his claim decides the issue as a final matter. Mayan Networks is not the controversial case here. Condor is the controversial case. Mayan Networks is in agreement with the Texas Bankruptcy Court, and now District Court, on appeal to the Fifth Circuit in the Stonebridge case. It's in agreement with the Third Circuit and PPI on most issues. The Condor case is the one that stands out on its own, saying that if you want to get around the intent of bankruptcy law, just make sure your termination damages are secured by a letter of credit, because then even post-petition, you'll be able to siphon assets of the estate out of the estate to the detriment of other creditors for the full amount of your multiyear claim. That goes against the intent of Congress. It goes against the purpose and reading of these two sections. In the Mayan Networks case, the BAP noted that 502b6 is ambiguous because it does not mention if you need to apply these payments to the cap. Therefore, we looked at legislative history. Yet in the Condor case, it said that because 502b7 doesn't mention reference to these payments, you look at the plain meaning only. But those two sections have the same wording and the same omission to reference to payments made from things such as letters of credit. One can't be ambiguous while the other has plain meaning. The BAP was correct when it recognized that they are ambiguous, as had been recognized in the Handy Andy case before it, and that you need to look to legislative history. The legislative history instructs us that payments have to be applied to the cap in 502b6, and for 502b7, it tells us that it tracks 502b6. Tracks cannot mean that these two sections have exactly opposite meanings. It has to mean that they are meant to apply in the same way to the same types of payments. The Condor opinion allows executives or any employee who has the power to get their termination damages secured by a letter of credit to collect those damages, multi-year damages, in full and swamp the estate to the detriment of all other creditors. Mr. Costello talks about the date of determining the case. But the thing that has to be remembered is the cap reaches back explicitly to the termination date. The language saying that the claim is determined as of the petition date is talking about whether or not it's a prepetition claim or a postpetition claim. Thank you, Mr. Richardson. Mr. Costello, thank you as well. The case has been submitted. The last case then to be argued is 04-15592.
judges: Alarcon, Silverman, Bea